**BOULEVARD INVESTMENT COMPANY, Appellant,**

v.

**CAPITOL INDEMNITY CORPORATION, Respondent.**

**No. ED 77363.**

Missouri Court of Appeals, Eastern District, Division Three.

Sept. 26, 2000.

---

Marvin Klamen, St. Louis, for appellant.

Brown & James, P.C., Russell F. Watters, T. Michael Ward, Bart B. Zuckerman, St. Louis, for respondent.

GARY M. GAERTNER, Presiding Judge.

Appellant, Boulevard Investment Company, ("Boulevard"), appeals the judgment of the Circuit Court of the City of St. Louis, entered in favor of the respondent, Capitol Indemnity Corporation, ("Capitol"), granting Capitol's motion for summary judgment insofar as the court held the pollution exclusion in the said insurance policy barred coverage for the loss at issue. We affirm.

Boulevard, the owner of property leased to B.T. Restaurants, ("B.T."), sued B.T. for property damage caused by blockage of the premises' plumbing system from various forms of waste, including kitchen grease, released into the system by B.T. On August 29, 1997, Boulevard obtained a judgment against B.T. in the Circuit Court of the City of St. Louis for the amount of $ 27,953.37. The court found the property damage was in whole or in part, the result of blockage in the plumbing system from various forms of waste, including kitchen grease, scour pads, heavy plastic, and underwear, allowed into the system by B.T. in their use of the premises as a restaurant. On February 19, 1998, Boulevard filed an equitable garnishment action against Capitol, B.T.'s insurer, to recover the amount awarded in the judgment against B.T.

Both parties filed motions for summary judgment. Boulevard argued the items found in the sewer were not pollutants as defined in the insurance policy. Capitol denied any liability to indemnify B.T. or pay Boulevard as B.T.'s judgment creditor, arguing the pollution exclusion excused it from any liability in this case. The pertinent provisions of the insurance policy are as follows:

2. Exclusions.

This insurance policy does not apply to:

* * *

f. Pollution

858

(1) "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at any time.

\* \* \*

Pollutants means any solid, liquid, gaseous, or thermal irritant or contaminant including smoke, vapor, soot, fumes, acid, alkalis, chemicals and waste. Waste includes material to be recycled, reconditioned or reclaimed.

On December 23, 1999, the trial court entered an order and judgment finding for Capitol on its motion for summary judgment and against Boulevard on its motion for summary judgment. The court held the disposal of grease and other kitchen waste into a sewer line constituted the release of a pollutant pursuant to the terms of the policy and the pollution exclusion therefore applied, excluding any liability by Capitol.

On its sole point on appeal, Boulevard argues the trial court erred in granting Capitol's motion for summary judgment; arguing the release of grease and other kitchen waste into a sewer line does not qualify as a pollutant as defined in the policy, and therefore, Capitol is liable for the judgment against its insured, B.T. We disagree.

Where an issue can be decided as a matter of law, summary judgment is proper. *Moore v. Commercial Union Ins. Co.*, 754 S.W.2d 16, 18 (Mo.App. E.D.1988) "The interpretation of the meaning of an insurance policy is a question of law." *Millers Mutual Insur. Assn. of Illinois v. Shell Oil Co.*, 959 S.W.2d 864, 866 (Mo. App. E.D.1997). On appeal, questions of law receive *de novo* review, giving no deference to the trial court's decision. *Id.*

The issue presented in this case is one of first impression. However, it is well-settled law in Missouri that when interpreting the language used in an insurance policy, the court gives the term its ordinary meaning, unless it appears a technical meaning was intended. *Peters v. Employers Mut. Cas. Co.*, 853 S.W.2d 300, 303 (Mo.Banc 1993). To determine the ordinary meaning of a term, courts consult standard English language dictionaries. *Id.*

As previously cited, "pollutant" as defined by the policy includes "waste." The term "waste" is defined as "4 .... (b) refuse from places of human or animal habitation: as (1): GARBAGE, RUBBISH ... EXCREMENT ... SEWAGE." Webster's Third New International Dictionary 2580 (4th ed.1976).

In the case at hand, B.T. released grease and other kitchen waste into the premises' plumbing system resulting, in whole or in part, in extensive property damage. We find the grease and other kitchen waste disposed of in the manner described above is "waste," within the ordinary meaning of the word, therefore it falls within the pollution exclusion endorsement barring coverage of the property loss at issue. Our holding is consistent with the finding of a California court applying the dictionary definition to an almost identical pollution exclusion endorsement to indistinguishable facts. *Panda Management Co., Inc. v. Wausau Underwriters Ins. Co.*, 73 Cal.Rptr.2d 160 (Cal.App.1998) (ordered not published). There the court held the disposal of grease into the sewer system of a shopping center resulting in damage was considered "waste," therefore qualifying as a pollutant within the policy. *Id.* at 163. *See also, Matheny v. Ludwig*, 742 So.2d 1029 (La.App.1999) (nontoxic waste grease is considered a pollutant for purposes of the application of a total pollution exclusion.)

Based on the foregoing, we affirm the judgment of the trial court.

LAWRENCE G. CRAHAN, J., and GEORGE W. DRAPER, III, J., concur.