**STATE ex rel. Wilbur SCHOTTEL, Relator,**

v.

**The Honorable Larry D. HARMAN, Respondent.**

No. SC 87857.

Supreme Court of Missouri, En Banc.

Dec. 19, 2006.

---

10. Section 1.140, RSMo 2000.

Emmett D. Queener, Office of Public Defender, Columbia, for relator.

Jeremiah W. (Jay) Nixon, Atty. Gen., Cheryl Capnegro Nield, Asst. Atty. Gen., Charles S. Birmingham, Asst. Atty. Gen., Jefferson City, for respondent.

MARY R. RUSSELL, Judge.

Wilbur Schottel ("Relator") seeks discharge from confinement as a sexually violent predator ("SVP") pursuant to section 632.498, RSMo 2000. He asks this Court to prohibit the Respondent from applying section 632.498, RSMo Supp.2006, the amended version of the statute that became effective in June 2006, to his original petition for release filed in 2002. This Court holds that section 632.498, RSMo Supp.2006, applies to Relator's case. The preliminary writ of mandamus previously issued in this matter is quashed.

### Background

Relator was committed as a SVP in 2000 and filed a petition seeking discharge in 2002.[1] Section 632.498 [2] ensures that a SVP is not committed indefinitely, as it provides for annual review of a SVP's mental condition for determination of whether further commitment as a SVP is warranted. *In the Matter of the Care and Treatment of Wilbur Schottel v. State,* 159 S.W.3d 836, 845 (Mo. banc 2005) (hereinafter *"Schottel I"*),[3] held that Relator was

---

**1.** The history of Relator's case leading to confinement is explained in *In the Matter of the Care and Treatment of Wilbur Schottel v. State,* 159 S.W.3d 836, 838–39 (Mo. banc 2005).

**2.** Where otherwise unspecified, statutory references to section 632.498 are to RSMo Supp. 2006, the most recent version of that statute.

**3.** *Schottel I* describes the processes for periodic examinations of a SVP's mental condi-

entitled to a hearing on the merits of his 2002 petition for release under section 632.498, RSMo 2000.

*Schottel I* indicated that the burden of proof at the hearing on remand would be on the State " 'to prove *beyond a reasonable doubt* that [Relator's] mental abnormality remains such that [he] is not safe to be at large and if released is likely to engage in acts of sexual violence.' " *Schottel I*, 159 S.W.3d at 845–46 (quoting section 632.498, RSMo Supp.2004, emphasis added). The burden of proof in the version of section 632.498 in effect at the time of remand, RSMo Supp.2004, was the same burden as found in section 632.498, RSMo 2000, the version in effect at the time Relator filed his petition. *Schottel I*, 159 S.W.3d at 846 n. 9.

The hearing on remand resulted in a mistrial and a retrial date was set. Before the retrial, however, section 632.498 was amended in 2006 to change the State's burden of proof and the remedy for a SVP released from confinement.

### Amendments to section 632.498

Under the amended statute, the State now bears the burden "to prove by *clear and convincing evidence* that the committed person's mental abnormality remains such that the person is not safe to be at large and if released is likely to engage in acts of sexual violence." Section 632.498

---

tion. 159 S.W.3d at 839. It explains that if an annual review by the department of mental health concludes that a SVP does not qualify for release, then the SVP petitions for release, as Schottel did. After the petition for release is filed, the court holds a preliminary probable cause hearing. At this hearing it determines if probable cause exists to believe that the SVP's mental abnormality has so changed that the SVP is safe to be at large and will not engage in acts of sexual violence. If probable cause exists, the SVP is entitled to a second hearing, wherein the State has the burden of proof.

(emphasis added). The amended statute adds a new provision that any SVP released will be "conditionally released as provided in section 632.505[, RSMo Supp. 2006]." [4] Until this conditional release provision was included in section 632.498, an offender released from commitment was fully discharged and could not be returned to custody without new findings that the offender was a SVP. *See* section 632.484, RSMo 2000. An offender released under the amended version of section 632.498 remains committed to custody and can be returned to confinement upon a finding by a judge that a release condition was violated. Section 632.505.

The amended version of section 632.498 became effective June 5, 2006,[5] and the State requested that the amended statute be applied to Relator's retrial set for June 26, 2006. Relator urged the court to apply the prior section 632.498, RSMo 2000, the version of the statute in effect at the time he filed his petition for release.

The court held that the amended statute would apply, meaning that (1) the State's burden would be to prove by clear and convincing evidence, not beyond a reasonable doubt, that Relator's mental abnormality remained such that he was unsafe to be released; and (2) Relator would be conditionally released if the State failed to meet this burden.

---

**4.** All references to section 632.505 are to RSMo Supp.2006. Section 632.505.1 states that "[t]he primary purpose of conditional release is to provide outpatient treatment and monitoring to prevent the person's condition from deteriorating to the degree that the person would need to be returned to a secure facility designated by the director of the department of mental health."

**5.** The amendatory law had an emergency clause.

Relator now seeks relief from this Court. A preliminary writ was issued, and this Court now considers whether Relator's retrial should apply the amended version of section 632.498.

### Is application of the amended statute prohibited?

■ Relator contends that applying the amended version of section 632.498 violates the prohibition against retrospective laws in article I, section 13 of the Missouri Constitution.[6]

■ This Court reviews Relator's constitutional claims *de novo*. *Doe v. Phillips*, 194 S.W.3d 833, 841 (Mo. banc 2006). Statutes are presumed to be valid and will not be found unconstitutional unless they clearly contravene a constitutional provision. *Id.* Because retrospective laws are barred, the Court presumes that statutes operate prospectively unless legislative intent for retrospective application is clear from the statute's language or by necessary and unavoidable implication. *State Bd. of Registration for the Healing Arts v. Boston*, 72 S.W.3d 260, 263 (Mo.App.2002).

■ The prohibition against retrospective laws prevents laws that "impair vested rights acquired under existing laws," but "no one has a vested right that the law will remain unchanged." *Doe*, 194 S.W.3d at 850, 851 (internal citations omitted). "[A] vested right 'must be something more than a mere expectation based upon an anticipated continuance of existing law.' " *Id.* at 852 (quoting *Fisher v. Reorganized Sch. Dist.*, 567 S.W.2d 647, 649 (Mo. banc 1978)).

■ A law is not retrospective simply "because it relates to prior facts or trans-

actions but does not change their legal effect, or because some of the requisites for its action are drawn from a time antecedent to its passage, or because it fixes the status of an entity for the purpose of its operation." *Jerry–Russell Bliss, Inc. v. Hazardous Waste Mgmt. Comm'n*, 702 S.W.2d 77, 81 (Mo. banc 1985). A retrospective law is: "[O]ne which creates a new obligation, imposes a new duty, or attaches a new disability with respect to transactions or considerations already past. It must give to something already done a different effect from that which it had when it transpired." *Doe*, 194 S.W.3d at 850 (quoting *Squaw Creek Drainage Dist. v. Turney*, 235 Mo. 80, 138 S.W. 12, 16 (1911)).

In *Doe*, appellants argued that the affirmative obligation for them to register as sex offenders based solely on pleas and convictions preceding the effective date of "Megan's Law" [7] violated the prohibition against retrospective laws. *Id.* at 838. *Doe* found that application of the registration requirement operated retrospectively insofar as it looked "solely at [appellant's] past conduct" and used that past conduct "not merely as a basis for future decision-making by the [S]tate," but to require appellants to fulfill a new obligation and duty based solely on pre-act offenses. *Id.* at 852.

*Doe* is distinguishable from Relator's complaints about the amended version of section 632.498. Unlike the requirements at issue in *Doe*, section 632.498 does not look at past conduct. The retrial hearing to determine whether Relator can be released under section 632.498 will evaluate his current condition. The jury will be

---

**6.** Article I, section 13 states that "no ex post facto law, nor law impairing the obligation of contracts, or retrospective in its operation ... can be enacted."

**7.** The sex offender registration provisions found in sections 589.400 to 589.425, RSMo Supp.2005, are popularly known as "Megan's Law."

tasked with determining if, *at the time of the retrial,* Relator remains a SVP. Contrary to Relator's assertions, the amendments to section 632.498 are prospective in nature, not retrospective.

Further, contrary to Relator's arguments, application of the amended version of section 632.498 to his retrial is not prohibited because it would impose conditions on his release if he prevails on retrial. Imposition of conditions on the terms of Relator's release would relate to future acts, not those in the past, and would limit his future conduct. Relator's contention that he had a vested right in the availability of unconditional release because he filed his petition under the former version of the statute is without merit. Relator had no vested right that the law would remain unchanged. At the time the law was amended, Relator had never obtained release or been assured any future release would be unconditional.

## Conclusion

Application of the amended section 632.498 to Relator's retrial does not violate Missouri's prohibition against retrospective laws. The preliminary writ of mandamus previously issued in this matter is quashed.

All concur.